**IN THE UNITED STATE DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**LATISHA J. JOHNSON**                                                                 **PLAINTIFF**

**v.**                                             **4:07CV01061-WRW**

**WAL-MART and DAVID PASSALAQUA**                                      **DEFENDANTS**

**ORDER**

Pending is Defendants' Motion for Summary Judgment (Doc. No. 25).  Plaintiff has not responded and the time for doing so has passed.

Plaintiff brings this cause of action under Title VII of the Civil Rights Act of 1964 as amended[1] and 42 U.S.C. § 1981. For the reasons set out below, the Motion for Summary Judgment is GRANTED.

**I.    SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.[2]  The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[3]

The Court of Appeals for the Eighth Circuit has cautioned that summary judgment is an extreme remedy that should only be granted when the movant has established a right to the judgment beyond controversy.[4]  Nevertheless, summary judgment promotes judicial economy by

---

[1]42 U.S.C. § 1981, 1982, and 2000e *et seq.*

[2]*Holloway v. Lockhart*, 813 F.2d 874 (8th Cir. 1987); Fed R. Civ. P. 56.

[3]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

[4]*Inland Oil & Transport Co. v. United States*, 600 F.2d 725, 727 (8th Cir. 1979).

1

preventing trial when no genuine issue of fact remains.[5] This court must view the facts in the light most favorable to the party opposing the motion.[6] The Eighth Circuit has also set out the burden of the parties in connection with a summary judgment motion:

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*,"[to point] out to the District Court," that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.[7]

Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.[8]

## II.     INADEQUACY OF PLAINTIFF'S RESPONSE

Because Defendants presented a properly supported motion, Plaintiff had the burden to demonstrate the existence of a genuine dispute. Rule 56 of the Federal Rules of Civil Procedure reads:

> [When] a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.[9]

If the adverse party does not do this, summary judgment will be granted, if appropriate. In addition to the standards established by the Federal Rule, Local Rule 56.1 reads:

---

[5] *Id.* at 728.

[6] *Id.* at 727-28.

[7] *Counts v. MK-Ferguson Co.*, 862 F.2d 1338, 1339 (8th Cir. 1988) (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-74 (8th Cir. 1988) (citations omitted)).

[8] *Anderson*, 477 U.S. at 248.

[9] FED. R. CIV. P. 56.

(b) If the non-moving party opposes the motion, it shall file, in addition to any response and brief, a separate, short and concise statement of the material facts as to which it contends a genuine issue exists to be tried.

(c) All material facts set forth in the statement filed by the moving party pursuant to paragraph (a) shall be deemed admitted unless controverted by the statement filed by the non-moving party under paragraph (b).

### III.   BACKGROUND

The facts of this case are paraphrased below based on Defendants' undisputed Statement of Material Facts:

Plaintiff, La Tisha Johnson, worked as a Wal-Mart Co-Manager in Conway, Arkansas. On December 30, 2006, a customer returned to the Conway Wal-Mart store a 52-inch RCA television that he purchased on the day after Thanksgiving for $487. When the TV was returned on December 30, the identical televisions were no longer priced at $487, but instead at $850. Plaintiff noticed the returned TV in the "claims area," and contacted the accounting department to determine the amount refunded to the customer. Plaintiff wanted to purchase the TV.

Plaintiff learned the reasons for the TV's return and that the refunded amount was $487. She decided to purchase the TV for $200 because that was "50 percent of what the TV was refunded for." Plaintiff was going to buy the TV during her lunch break, but her break ended before she could buy it, so she asked Assistant Manager Njambi Gitauo to purchase the TV for her.

Plaintiff did not scan the TV into the Wal-Mart system, or mark it down in such a manner that the register would recognize a price of $200. Because Wal-Mart's system did not reflect a sale price of $200 for the TV, Ms. Gitauo and Jeremy Byford, the electronics Associate stationed at the register, called Plaintiff over to the register. Plaintiff instructed Mr. Byford to key into the register the sale price of $200. Mr. Byford later reported the incident to his department manager. In a written statement authored by Plaintiff after Wal-Mart learned of the transaction, Plaintiff wrote, "So I made a decision to buy the TV at ½ that price since I was going to get it fixed myself and it did not have a remote or instructions in it." Plaintiff admitted that she had Mr. Byford "hand key" into the register the purchase price.
On January 16, 2007, Plaintiff met with Passalaqua and the Market Asset Protection Manager. Passalaqua informed Plaintiff that she was being terminated, because of "Gross Misconduct – Integrity Issue (Theft, Violent Act, Dishonesty, Misappropriation of Company Assets)." Plaintiff executed a "Restitution Note" in which she agreed to make twelve monthly payments of $43 to Wal-Mart to pay the remaining balance she owed on the TV. Directly above Plaintiff's signature on the Restitution Note, the form states, "I admit to taking item(s) of value with the intent to convert them for my use or the use of another and, therefore, have created this indebtedness."

Plaintiff filed her Charge of Discrimination against Wal-Mart on February 23, 2007. On July 27, 2007, the EEOC issued to Plaintiff a Dismissal and Notice of Rights. On October 26, 2007, Plaintiff filed the present lawsuit.[10]

### III. DISCUSSION

Because Plaintiffs' claims are based on indirect evidence, the claims must be analyzed under the burden-shifting framework of *McDonnell Douglas Corp. v. Green.*[11]  Under the *McDonnell Douglas* analysis, the plaintiff must first establish a *prima facie* case of discrimination.  Once the plaintiff meets this initial threshold, a presumption that the employer "unlawfully discriminated against the employee" arises.[12]  The burden of production then shifts to the employer, who must articulate some legitimate, nondiscriminatory reason for the employment decision.[13]

The Supreme Court has mandated that the determination that a defendant has met its burden of production can not be accomplished by assessing the credibility of the reason given by the defendant for its decision;[14] therefore, once the defendant articulates a "legitimate, nondiscriminatory reason for its decision," the presumption raised by the *prima facie* case of discrimination is rebutted and "drops from the case."[15]  However, at all times in this analysis, the ultimate burden of production remains with the plaintiff,[16] and once the defendant has met its burden, the plaintiff must have "a fair opportunity to show that [the employer's] stated reasons

---

[10]Doc. No. 27.

[11]411 U.S. 792 (1973).

[12]*St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993).

[13]*McDonnell Douglas*, 411 U.S. at 802.

[14]*Hicks,* 509 U.S. at 509.

[15]*Id.* at 507.

[16]*Id.*

for [the employment decision was] in fact pretext,"[17] or that the proffered reasons for the employer's action were not true.[18]

In her Complaint, Plaintiff asserts that she was terminated based on her race -- African-American, but Defendants contend that Plaintiff was terminated because she violated Wal-Mart's Associate Purchase Policy.[19] Even assuming Plaintiff established a *prima facie* case, she has failed to present sufficient evidence that Defendants' proffered non-discriminatory reason for terminating her was pretextual and that her race was a motivating factor in Defendants' decision to terminate her.

Because Defendants presented a nondiscriminatory reason for their actions, Plaintiff "must show both that the reason was false and that discrimination was the real reason."[20] In response, Plaintiff argued that Defendants did not terminate "Caucasian employees for the same or similar policy violations."[21] Yet, during her deposition, she conceded that these situations

---

[17]*McDonnell Douglas*, 411 U.S. at 804.

[18]*Hicks*, 509 U.S. at 508.

[19]The policy reads:
Only Salaried Members of Management can authorize the point-of-sale markdown of an item (i.e., no other store Associate may put a clearance price on defective or damaged merchandise). Neither the Facility Manager nor any Salaried Member of Management may authorize such markdowns on items they intend to purchase. It is a violation of this policy for anyone to authorize a markdown on items they intend to purchase.

Defective or damaged merchandise must have been marked down and offered to the public at the lower price for at least 24 hours before any Associate, or any Salaried Member of Management, including the Facility Manager, can purchase it.
Doc. No. 27.

[20]*Stuart v. General Motors Corp.*, 217 F.3d 621, 634 (8th Cir. 2000).

[21]Doc. No. 2.

involved managers marking down items that were purchased by *other* associates.[22]  Plaintiff also conceded that she knew of no other managers who had marked down an item and then purchased it for himself/herself.  Based on the evidence, the employees Plaintiff refers to were not similarly situated.  Additionally, Wal-Mart presented evidence that a Caucasian Assistant Manager -- who might be considered "similarly situated" -- of a Sheridan, Arkansas, store was terminated after she marked down items that she purchased for herself.[23]  In sum, Plaintiff has failed to present sufficient evidence to rebut Defendants' nondiscriminatory reason for terminating her employment.

## CONCLUSION

Based on the findings of fact and conclusions of law above, Defendants' Motion for Summary Judgment (Doc. No. 25) is GRANTED.

IT IS SO ORDERED this 31st day of July, 2008.

/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE

---

[22] Doc. No. 25, Ex. 1.

[23] Doc. No. 27.